# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| NEXPAY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-01749 |
| ) | Judge Aleta A. Trauger |
| COMDATA NETWORK, INC., d/b/a ) | |
| COMDATA CORP., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

Now before the court are plaintiff NexPay, Inc.'s sealed Objections to and Motion to Strike Summary Judgment Evidence (Doc. No. 205); defendant Comdata Corp.'s sealed Motion to Strike the Declaration of Vincent Valentine (Doc. Nos. 218 (redacted), 223 (sealed)); and the defendant's sealed Motion to Strike Plaintiff's Statement of Additional Facts (Doc. No. 235), all of which have been fully briefed. The court's treatment of these motions presumes familiarity with the underlying facts.

**I.   Plaintiff's Objections to and Motion to Strike Summary Judgment Evidence**

In this motion, plaintiff NexPay, Inc. ("NexPay") seeks to exclude from the court's consideration the Declaration of Lisa Peerman (Doc. No. 179) or, in the alternative, to compel additional information about the communications with two law firms that are referenced in the Declaration. It also seeks to exclude the testimony in four specific paragraphs of the Declaration of Stephen Matthew Thomason (Doc. No. 181) and three paragraphs of the Declaration of Mark Perry (Doc. No. 180), which are virtually identical to three of the four paragraphs it seeks to strike from Thomason's Declaration. The motion (Doc. No. 205) is **DENIED IN PART AND**

**GRANTED IN PART**, as set forth below.

    A.    **Peerman's Declaration**

Peerman is an in-house lawyer for Comdata. In the Declaration that is the target of NexPay's motion, she testified that Comdata engaged two law firms in early 2012 to counsel Comdata on issues relating to the handling of funds for healthcare payments, as follows:

> 3. In early 2012, Comdata's legal department learned that Comdata was contracting with healthcare customers for use of Comdata's virtual card product for making healthcare claims payments. Through my experience with Comdata's then-parent corporation, Ceridian, a payroll and employee benefits processor, I was aware that regulations existed related to the processing and handling of employee retirement and healthcare funds. I became concerned that Comdata might become subject to certain state and federal regulations by engaging in such business.
>
> 4. I and my colleagues within Comdata engaged two law firms . . . to counsel Comdata on the issues raised by handling funds for healthcare claims payments.
>
> 5. As a result of the opinions and advice that those two firms provided, I was satisfied that Comdata could allow the use of its card products for healthcare payments in such a way that did not result in regulatory issues, including with respect to ERISA.

(Doc. No. 179 ¶¶ 3–5.)

She also denied any intent to waive attorney-client privilege related to those communications:

> 6. Comdata has not disclosed the opinions of either firm, and is not seeking to disclose the opinions, advice, or communications between, on the one hand, Comdata and, on the other hand, those firms.

(*Id.* ¶ 6.)

NexPay argues that Comdata cannot use Peerman's Declaration "simultaneously as a shield and a sword." (Doc. No. 205, at 2 (citing *New Phoenix Sunrise Corp. v. C.I.R.*, 408 F. App'x 908, 919 (6th Cir. 2010)).) That is, it contends that Comdata cannot use the testimony as a sword "by premising a defense on it" and still shield discovery of the documents underlying

the opinions by asserting attorney-client privilege. (*Id.*) It also argues that, under Rule 502(a) of the Federal Rules of Evidence, if a party waives the privilege by making an intentional disclosure of any attorney-client communication, the waiver extends to undisclosed communications concerning the same topic.

In response, Comdata argues that it is not relying on privileged communications to make its case and that it has not waived attorney-client privilege related to those communications. Rather, it maintains, it has merely identified through its General Counsel "the fact of a communication," which was also revealed on a privilege log, along with the memos generated by the law firms. (Doc. No. 214, at 1.) It argues that Peerman's Declaration does not disclose any information that was not already contained on the privilege log and further asserts that it does not intend to assert any defense, good faith or otherwise, based on its reliance on communications with counsel. Instead, the simple fact that Peerman communicated with outside counsel when she did is intended to corroborate part of Comdata's defense of independent creation in this trade-secret case.

Comdata compellingly distinguishes this case on its facts from that relied upon by NexPay, *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458 (E.D. Mich. 2008). In *Henry*, a Fair Labor Standards Act case, the defendant sought summary judgment on the issue of the willfulness of its violation of the statute, asserting that it had relied on the advice of counsel in determining that certain employees did not have to be paid overtime. The court was called upon to address objections to a magistrate judge's granting of a motion to compel the production of documents relating to communications between in-house and outside counsel on that topic. After surveying relevant opinions on point, the court held that,

> when a party asserts a defense of good faith or reasonableness, and affirmatively offers testimony that the party consulted with their attorney as factual support for

the defense, and when counsel's advice in some way supports the defendant's good faith belief, the defendant has put his counsel's advice "at issue" and thereby waives the attorney client privilege on the narrow subject matter of those communications.

*Id.* at 469.

*Henry* simply has no application here. The substance of counsel's advice is not at issue—NexPay does not claim that Comdata's practices violated ERISA or any other statute, and Comdata has not raised a defense tied to the legal opinions it obtained from the outside firms. Rather, it is the fact and particularly the timing of the communications that, it claims, support a defense that is wholly unrelated to whatever advice outside counsel provided.

NexPay's motion is **DENIED** insofar as it seeks to strike Peerman's Declaration.

**B.    Thomason's Declaration**

Matt Thomason is Comdata's Vice President of Business Development and formerly its Vice President of Solution Design. (Thomason Indiv. Dep., Doc. No. 189, at 14.) NexPay moves to strike paragraphs 4 through 7 of his Declaration, which amounts to essentially all of it.

*Paragraphs 4–6*

In paragraph 3, Thomason states that he had never seen what NexPay refers to as an "Echo Settlement File" (ESF) prior to NexPay's production of ESFs during this lawsuit. According to Thomason, an ESF "looks like a typical e-invoice." (Doc. No. 181 ¶ 3.) In the next three paragraphs of his Declaration, Thomason states:

> 4. The ESF is not a file that could have been beneficial to me in my role in creating the MT01 funding file.[1] The ESF does not readily appear to capture or include any authorization amount, confirmed [sic] when I read the ESF in conjunction with the document NexPay marked as Exhibit 1-C to its Objections

---

[1] According to Comdata, "[t]he MT01 is a data file with certain transaction information used to instruct healthcare customers to pay Comdata once a provider authorizes a transaction." (Def.'s Statement of Undisp. Facts, Doc. No. 185, ¶ 38 (citing Ables Dep., Doc. No. 186, at 168, 182).)

> and Answers to Defendant's First Set of Interrogatories. Neither the ESF nor the Exhibit 1-C appear on their face to capture an authorization amount and, therefore, do not appear to be for transactions that trigger a funding request upon an authorization event.
>
> 5. For example, the only "Action" descriptions in Exhibit 1-C and, therefore, captured in the ESF are "SETTLED," "VOID," and "Change to CHECK."
>
> 6. In contrast to the ESF, the MT01 file layout includes detailed information describing the life cycle of a particular virtual card (information Comdata already collected and maintained in its database), including a card's authorization activity.

(Doc. No. 181 ¶¶ 4–6.)

NexPay argues that Thomason's testimony "purports to state opinions and conclusions regarding computer programming and computer files" but that Thomason admittedly has no degree in and little experience with computer programming. (Doc. No. 205, at 4.) It moves to strike this testimony on the basis that Comdata has "not provided foundational evidence that Thomason is qualified to provide such testimony" and that he is not qualified to offer the "opinions and conclusions" set forth in paragraphs 4 through 6 of his Declaration. (*Id.*)

The court likewise has no degree in or experience with computer programming but has little difficulty in concluding that the testimony cited above does not state "opinions about computer programming," and, insofar as it refers to computer files, it concerns computer files with which Thomason was already very familiar or became familiar during the course of this lawsuit. He is testifying about his own work in creating a file and explaining why the ESF and the ESF file layout are different from the MT01 file he alleges that he created. In addition, as Comdata points out, Thomas testified at length in his individual deposition about the role he played in the creation of the MT01 funding file and other funding files and also about how they worked. (*See, e.g.*, Doc. No. 189, at 35–36, 51, 111, 120–23, 202–12.) NexPay's objection to the testimony is without merit. The motion to strike paragraphs 4 through 6 is **DENIED**.

*Paragraph 7*

In paragraph 7 of the Declaration, Thomason states:

> Based on the information available to Comdata, NexPay, Inc. has never requested that Comdata return "Evaluation Material" provided by NexPay to Comdata under the January 16, 2012 agreement between Comdata and NexPay. Likewise, NexPay has never requested that Comdata return "Evaluation Material" provided by NexPay to Comdata under the February 1, 2012 agreement between Comdata, Echo Health, Inc., and NexPay.

(Doc. No. 181 ¶ 7.) NexPay moves to strike this testimony on the basis that Comdata has not provided foundational evidence to establish that Thomason has personal knowledge of, or is in a position to know, the information about which he purports to testify. (Doc. No. 205, at 4.) It further argues that Thomason's deposition testimony affirmatively disqualifies him from offering this testimony, insofar as he stated during his individual deposition that he did not recall ever seeing the confidentiality agreements between NexPay and Comdata prior to his deposition and, in fact, was unaware that the relationship between the two companies was subject to a confidentiality agreement. NexPay claims that Thomason testified that his "communications with NexPay were limited to 'maybe one conversation' about refund issues." (*Id.* at 5 (citing Doc. No. 189, at 42).)

In response, Comdata argues that (1) NexPay does not actually dispute the contention that NexPay never requested that Comdata return "Evaluation Material" under the parties' confidentiality agreements (Doc. No. 214, at 5 (citing Doc. No. 181 ¶ 7)); and (2) Thomason served as Comdata's Rule 30(b)(6) corporate representative and, as such, was qualified to testify regarding Comdata's relationship with NexPay.

"An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P.

56(c)(4). The Sixth Circuit has held that a district court properly excludes from evidence statements in a declaration based upon the declarant's mere "belief" rather than personal knowledge. *See Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) (noting that "statements made on belief or 'on information and belief,' cannot be utilized on a summary-judgment motion" (quoting 10B Wright, Miller & Kane, Federal Practice and Procedure § 2738, at 345–46. 350–54 (3d ed. 1998) (referencing Rule 56(e), the predecessor of Rule 56(c)(4)))).

In its Statement of Undisputed Material Facts, Comdata avers that NexPay never requested that Comdata return Evaluation Material to NexPay under the parties' confidentiality agreements, citing paragraph 7 of Thomason's Declaration. (Doc. No. 185 ¶ 161.) In response, NexPay neither admits nor denies the truth of the statement. Rather, it asserts that the fact is not material and objects on the basis of the arguments set forth in its Motion to Strike. (Doc. No. 208 ¶ 161.) Comdata maintains that Thomason, as corporate representative, is competent to testify as to this fact, but it does not point to any portion of his corporate deposition where he is asked about this topic or offers a foundation for the basis of his knowledge regarding whether the Evaluation Material was ever returned.

The court agrees that Thomason, even in his role as corporate representative, has failed to offer any foundation from which the court could conclude that he has personal knowledge about whether NexPay requested the return of Evaluation Material. His statement is purportedly based on "information available to Comdata" (Doc. No. 181 ¶ 7), but he does not elaborate on what that information is or from what sources he garnered it. He does not claim to have personal knowledge of the fact. The court therefore **GRANTS** NexPay's motion to strike from consideration paragraph 7 of Thomason's Declaration. The court further notes, however, that the truth of the statement in ¶ 7 is not seriously disputed by NexPay, nor is it material to the

underlying summary judgment motion.

C.     **Perry's Declaration**

Mark Perry is a programmer analyst for Comdata. (Perry Dep., Doc. No. 187, at 10.) NexPay objects to paragraphs 4, 5 and 6 of Perry's Declaration, which are nearly identical to paragraphs 4, 5, and 6 of the Thomason Declaration, quoted above. (*See* Doc. No. 180 ¶¶ 4–6.)

NexPay again argues that Comdata has failed to provide foundational evidence that Perry has personal knowledge of, or is in a position to know, the information about which he purports to testify. The court is not persuaded. It is apparent from the record that Perry does have personal knowledge regarding the creation of the MT01 file, and the testimony in his Declaration, on its face, appears to be based on his personal observation of an ESF file and consists of a description of his understanding of the ESF file based on that observation. The motion to strike Perry's Declaration is **DENIED**.

II.    **Defendant's Motion to Strike the Declaration of Vincent Valentine**

Comdata moves to strike the Declaration of Vincent Valentine, offered in support of NexPay's opposition to summary judgment. Comdata characterizes the Declaration as a tardy effort to supplement NexPay's expert disclosures, an inappropriate attempt to "revise and supplement" the trial testimony Valentine already gave at his August 2017 deposition for proof, and an ineffective attempt to authenticate documents with which he has not demonstrated sufficient familiarity. As described below, the motion (Doc. No. 218) is **DENIED IN PART AND GRANTED IN PART**.

A.     **The Supplementation of Trial Testimony**

NexPay, which formerly operated out of Texas, declared bankruptcy in Texas in mid-2015, approximately a year after initiating this lawsuit. It is no longer a going concern, and it no

longer has any current employees. The stay imposed as a result of NexPay's filing of a Suggestion of Bankruptcy in July 2015 was lifted in July 2016. (*See* Doc. No. 56.) Special counsel for NexPay's bankruptcy trustee was appointed solely for the purpose of pursuing this lawsuit against Comdata. (*See* Doc. No. 55 and exhibits filed therewith.) As NexPay is not a going concern, the bankruptcy trustee and the lawyers representing the debtor's estate in this lawsuit are not in a position to compel any of NexPay's former employees in Texas to testify at a trial in Tennessee or to function as corporate representatives.

During the course of discovery, according to Comdata, NexPay relied extensively on the assistance of David Gillman, NexPay's former President and CEO, and Vincent Valentine, NexPay's software developer. (Doc. No. 223, at 2 (citing Doc. No. 43 ¶ 10; Doc. No. 194, at 18–19).) After Comdata served a Notice of Deposition for NexPay's Rule 30(b)(6) representative, NexPay originally represented that Gillman and Valentine would be the bankruptcy estate's corporate representatives. It later reversed course when it discovered that neither Gillman nor Valentine was willing to serve in that capacity. (Doc. No. 223, at 4 (citing Doc. No. 95, at 2).) NexPay took the position that, although its former employees were not within its control, they "hold the knowledge Comdata seeks to discover by its Rule 30(b)(6) notice." (*Id.*) However, NexPay also represented that Valentine could not verify discovery answers.

Gillman and Valentine appeared for depositions in Texas in August 2017, subpoenaed by NexPay. NexPay conducted a direct examination of both witnesses, and Comdata cross-examined them. NexPay conducted a re-direct. The parties understood that these depositions could be used for proof at trial.

NexPay later identified Valentine as a "non-retained expert" in its Expert Witness Disclosures. (Doc. No. 219-2.) It stated that Valentine would testify "regarding his involvement

in the creation and design of the payment system identified in NexPay's complaint, and his role in creating the funding-at-authorization method at issue in this case, and why he believes Comdata misappropriated that proprietary method from NexPay." (*Id.* at 2.) It specifically disclosed that Valentine's "opinions and conclusions are set forth in his deposition taken on August 9, 2017, including its exhibits." (*Id.*) It never supplemented this disclosure, even after deposing Comdata's Rule 30(b)(6) representatives in February 2018 or after Comdata served its expert disclosures.

In response to Comdata's Motion for Summary Judgment, NexPay has filed the Declaration of Vincent Valentine, responding to certain specific facts upon which Comdata relies in support of its motion. Comdata maintains that many of the statements in the Declaration are not "admissible in evidence," as required by Rule 56(c)(4) of the Federal Rules of Civil Procedure, because they concern (1) facts he has already offered testimony about; (2) opinions about testimony provided by Comdata's Rule 30(b)(6) representative; and (3) opinions about Comdata's Rule 26(a)(2) disclosures. (Doc. No. 223, at 7.) It insists that "[t]he only way this testimony . . . can be admissible is if Mr. Valentine testifies at trial," but that NexPay has consistently represented that it has no control over Valentine and that it could not compel him to testify in Nashville. (*Id.*) Comdata insists that Valentine's testimony must be limited to his deposition testimony or that he should be required to appear in Nashville for a second deposition—at NexPay's expense. (*Id.* at 8.)

In response, NexPay points out that there is a distinction between being a corporate representative and a fact witness. It states both: (1) that it never represented that Valentine refused to testify at trial as a fact witness; and (2) that the federal procedural rules long ago eliminated the distinction between depositions to be offered as proof and those taken for

discovery purposes.

The court agrees that the fact that Valentine's deposition was supposedly taken for "proof" and has never been supplemented does not eliminate the possibility that he will (voluntarily) testify at trial or that Comdata should have the opportunity to redepose him. Comdata offers no legal support for this proposition. This objection to Valentine's statements in his declaration is **OVERRULED**.

### B. Failure to Supplement Expert Disclosures

In its motion, Comdata argues only very generally that, because NexPay's expert disclosure represented that Valentine's expert testimony was limited to his deposition testimony, it "should not be allowed (i) to represent to counsel and the Court that someone will not appear (including to avoid presenting a representative witness with knowledge in the forum), (ii) to subpoena them and (after spending preparation time with them) crystallize direct testimony, and (iii) then supplement and clean up that testimony (and any remaining gaps in the case) by declaration after the close of discovery" *unless* Valentine testifies at trial. (Doc. No. 223, at 7.) It further insists that "exclusion of [Valentine's] Declaration is the necessary consequence of NexPay's failure to timely serve a Rule 26(a)(2)(C) supplemental disclosure." (Doc. No. 246, at 2–5.) NexPay responds that it intends to call Valentine at trial in his individual capacity and maintains that his testimony is based on personal knowledge and experience in the industry and, as such, is admissible as lay opinion testimony. (*See generally* Doc. No. 231, at 7.)

The objection to the Declaration is also **OVERRULED**. The court finds that Valentine's testimony is lay opinion testimony. It is rationally based upon his personal perceptions from his review of the MT01, in light of his experience in the payment processing industry and his familiarity with NexPay/Talon's funding processes. *See* Fed. R. Evid. 701(a). Second, the court

has found his testimony helpful to the determination of facts at issue in the defendant's Motion for Summary Judgment. *See* Fed. R. Evid. 701(b). Third, the court finds that Valentine's testimony is "not based upon scientific, technical, or other specialized knowledge within the scope of Rule 702," but, instead, is based upon his own "particularized knowledge." Rule 701(c) & advisory committee's notes. Accordingly, the Declaration is generally admissible under Rule 701.

  **C.** **Authentication of Documents**

Comdata next objects that Valentine should not be permitted to authenticate documents about which he has no personal knowledge and, with respect to some, has already testified that he had no personal knowledge. Specifically, it objects to Valentine's authentication of any documents not shown to him during his deposition, which apparently includes any exhibits numbered higher than Exhibit 31. These consist of email chains on which Valentine was not copied; documents he does not appear to have created, received, or signed; and emails on which he may have been copied but about which he was never deposed. (*See* Doc. No. 223, at 8–9.)

With respect to all of the referenced exhibits, Valentine attested in his Declaration that these documents are "true and correct copies of the documents they purport to be and were kept and maintained in the ordinary course of Talon's and NexPay's business"; that the organizations' representatives "made or transmitted these records for use in each organization's business," in the "regular course of each organization's business"; and that "[t]he persons who made or transmitted these records had knowledge of the acts or events recorded, and these records were made at or near the time indicated in each record or reasonably soon thereafter." (Doc. No. 209 ¶ 27.) He further attests that NexPay and Talon maintained these documents in their business records, that he is personally familiar with how these organizations maintained their records, and

that part of his duties for each organization "included maintaining such records and . . . assisting in the collection of the documents." (*Id.* ¶ 26.)

Under Rule 803(6) of the Federal Rules of Evidence, in order for a party to admit a business record, the business record must meet the following requirements:

> (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*United States. v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998). Such evidence is not admissible, however, if the opponent shows "that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E).

While the requirements must be "shown by the testimony of the custodian or another qualified witness," Fed. R. Evid. 803(6)(D), the rule "does not require that the custodian personally gather, input, and compile the information memorialized in a business record." *Weinstock*, 153 F.3d at 276. "The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices. Likewise, [t]o be an 'other qualified witness,' it is not necessary that the person laying the foundation for the introduction of the business record have personal knowledge of their preparation." *United States. v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003) (internal quotations marks and citations omitted).

Here, Valentine's testimony makes the requisite showing, and, except with respect to Exhibits 43, 44, and 45, which are addressed separately below, Comdata has offered no evidence suggesting a lack of trustworthiness regarding the source of the information or the circumstances of preparation. The court finds that Valentine is a qualified witness under Rule 803(6)(D). The

court **OVERRULES** Comdata's objections to Valentine's authentication of Exhibits 1, 3–4, 8, 12–13, 23, 30, 32–36, 38, 40, 42, 156, and 167.

Comdata specifically objects to Valentine's authentication of Exhibits 43, 44, and 45, which were originally part of a collective Exhibit 1 to NexPay's answers to interrogatories. These exhibits state on their face that they are Echo Settlement Files created by V. Valentine on June 25, 2010, June 1, 2011, and June 25, 2012 (Ex. 43, also labeled Interrog. Ex. 1-B, Doc. No. 212, at 86–87); an Echo Settlement File created by V. Valentine on May 28 2013 and an MT0001 File created by Comdata on May 28, 2013 (Ex. 44, also labeled Interrog. Ex. 1-F, Doc. No. 212, at 88); and an annotated excerpt from the May 28, 2013 Comdata MT0001 (Ex. 45, also labeled Ex. Interrog. Ex. 1-H, Doc. No. 212, at 89) (Doc. No. 212, at 86–89). According to Comdata, no witness has testified regarding the provenance of these exhibits. Gillman testified that he might "have had a hand in providing some information" for the documents but believed his daughter or another attorney might have assisted in their preparation. (*See* Doc. No. 208 ¶ 112 (responding to the defendant's statement that "Mr. Gillman testified that either his daughter (a lawyer in Texas) or Mr. Bennett (counsel of record for NexPay) prepared Interrogatory Exhibit 1" (citing Gillman Dep., vol. I, 192:3–25) without admitting or denying the truth of the statement, disputing only that it was "material.").) In addition, Comdata argues that Valentine testified that he saw Interrogatory 1 (which incorporates Exhibits 43–45) for the first time the week before his August 2017 deposition. (Doc. No. 223, at 10 (citing Doc. 194, at 125–26 (testifying that he first saw Exhibit 1 in consultation with NexPay's attorneys, "to help them describe and understand the exhibits attached")).)

Specifically with respect to Exhibit 43, Valentine testified that he did not recall whether he created that exhibit but that he "supplied the files" to David Gillman or to NexPay's counsel.

(Doc. No. 194, at 128.) He "supplied those files" for Exhibit 44. (*Id.* at 129.) He "supplied the raw data" for Exhibit 45 but "did not highlight or label." (*Id.*) He acquired the "raw data" from Comdata. (*Id.*) In his Declaration, he describes Exhibit 45 (Ex. 1-H) as "an accurate comparison [between an ESF and MT01 file] of the kinds of similar information each file contains." (Doc. No. 209 ¶ 23.)

NexPay does not respond directly to Comdata's reasons for excluding these exhibits, and the court finds that Comdata has pointed to evidence suggesting "that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). That is, there is some confusion as to who created the documents, and they appear on their face to have been created in anticipation of litigation rather than in the ordinary course of business. Comdata's Motion to Strike is **GRANTED** with respect to these three documents only, and the court will exclude these exhibits from consideration in ruling on the Motion for Summary Judgment.[2]

### III. Defendant's Motion to Strike Plaintiff's Statement of Additional Facts

Because the plaintiff did not initially file a separate statement of facts in accordance with this court's Local Rules, but appeared to rely on numerous such facts in opposing the defendant's Motion for Summary Judgment, the court directed the plaintiff to file its separate statement of facts that it contended to be both material and potentially disputed. The plaintiff has now done so. (Doc. No. 228.) Comdata has both responded to the statement (Doc. No. 234) and moved to strike it in its entirety (Doc. No. 235).

In support of its motion, Comdata posits that (1) many of the "statements" appear to be copied directly from NexPay's Response to Comdata's Motion for Summary Judgment and, as a

---

[2] This ruling does not necessarily exclude NexPay from offering these exhibits at trial, assuming it lays a proper foundation for them.

result, reflect legal positions or a lawyer's characterization of evidence, rather than simple facts; (2) many of the numbered paragraphs in the statement incorporate multiple "facts"; (3) many of NexPay's citations to the record do not actually support its purported facts; and (4) NexPay's statement consistently refers to its "funding at authorization" process as "the" funding at authorization process rather than "a" process, which constitutes legal argument not supported by any of NexPay's record citations.

While Comdata's observations about the deficiencies in NexPay's Statement of Additional Facts are generally correct, the court nonetheless **DENIES** the motion (Doc. No. 235) to strike the statement in its entirety. The court notes that Comdata, while objecting to many of the individual statements on the bases articulated above, also concedes that the vast majority of NexPay's additional facts are undisputed—at least for purposes of its Motion for Summary Judgment. The court will consider each of Comdata's responses to the individual statements in context and determine, based on the record, what facts are supported by the evidence and are actually undisputed in ruling on the Motion for Summary Judgment.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge